1  Robert B. Rosenstein  SBN 90036
   Donald W. Hitzeman  SBN 110962
2  Laurie E. Twitchell    SBN 187366
   ROSENSTEIN & HITZEMAN, AAPLC
3  28600 Mercedes Street, Suite 100
   Temecula, CA 92590
4  Telephone: (951) 296-3888
   Facsimile: (951) 296-3889
5  E-mail: robert@rosenhitz.com
   dwhitzeman@rosenhitz.com
6  letwitchell@rosenhitz.com

7  Attorneys for Snowtime Holdings, Inc.
   Debtor and Debtor-In-Possession

8

9              UNITED STATES BANKRUPTCY COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    RIVERSIDE DIVISION

12  In Re:                          )  Case No.: 6-09-36997-TD
                                    )
13  SNOWTIME HOLDINGS, INC.         )  Chapter 11
                                    )
14     Debtor and Debtor-In-Possession.  )  **NOTICE OF MOTION AND MOTION
                                    )  FOR ORDER AUTHORIZING THE SALE
15                                  )  OF ESTATE PROPERTY FREE AND
                                    )  CLEAR OF ALL LIENS, CLAIMS, AND
16                                  )  INTERESTS THEREON TO AN
                                    )  INSIDER; DECLARATION OF SAMMY
17                                  )  CILING IN SUPPORT THEREOF**
                                    )
18                                  )  **Date: July 15, 2010
                                    )  Time:  10:00 a.m.
19                                  )  Courtroom: 225
                                    )  Place: 3420 Twelfth Street, Riverside CA
20  _____    92501**

21      **TO   THE   HONORABLE   THOMAS   B.   DONOVAN,   UNITED   STATES**

22  **BANKRUPTCY JUDGE, PARTIES IN INTEREST, AND THE OFFICE OF THE UNITED**

23  **STATES TRUSTEE:**

24      **PLEASE TAKE NOTICE** that on July 15, 2010, at 10:00 a.m., in courtroom 225 of the

25  United States Bankruptcy Court, Central District of California, Riverside Division, located at 3420

26  Twelfth Street, Riverside, CA 92501, Chapter 11 Debtor and Debtor-in-Possession, Snowtime

27  Holdings, Inc. ("Snowtime") will and hereby does move the Court for an Order authorizing the sale

28  of the bankruptcy estate's real property ("Property"), located at 23120 Carancho Road, Temecula,

CA 92590, and bearing assessor's parcel number 936-120-006, free and clear of all liens, claims, and interests of Bank of America, N.A. to an "insider," as that term is defined under 11 U.S.C. § 101(31), of Snowtime.

The Property is residential property. The Property has been appraised by two (2) separate licensed appraisers. One appraisal resulted in a value of Eight Hundred Eighty Thousand Dollars ($880,000.00) and the second appraisal resulted in a value of Nine Hundred Thousand Dollars ($900,000.00) (See Appraisals attached as Exhibit "1" to the Declaration of Sammy Ciling ("Ciling Declaration")). The proposed purchaser is willing to pay, in full, the higher appraisal value of Nine Hundred Thousand Dollars ($900,000.00) ("Purchase Price") for the purchase of the Property. Therefore, the Purchase Price represents 100% of the fair market value of the Property, which value was determined using the higher appraisal amount for the Property.

The name of the proposed purchaser for the Property is Anke Ciling ("Purchaser"). Purchaser's address is 44600 El Calamar Road, Temecula, 92590. Purchaser is the wife of Snowtime's president, sole director, and sole shareholder, Sammy Ciling, and therefore, is considered an insider of Snowtime. No other bidders have bid on the Property since the Purchaser tendered her offer to purchase the Property.

Snowtime and Purchaser have entered into an agreement for the purchase of the Property ("Purchase Agreement"). (See Exhibit "2" to Ciling Declaration.) The Purchase Agreement is subject to this Court's approval pursuant to the terms therein. Purchaser has secured financing for the purchase of the Property as set forth in the Loan Pre-Approval Confirmation Letter. (See Exhibit "3" to Ciling Declaration.)

Per Paragraph 6 of the Purchase Agreement, Purchaser and Snowtime will each pay their own expenses, costs, and taxes accrued in connection with the sale of the Property. The Property is to be sold free and clear of all liens, claims, and interests thereon. No real estate brokers were employed with respect to the proposed sale of the Property.

The Property is a large part of the bankruptcy estate's assets. Snowtime brings this Motion on the grounds that: (i) the sale of the Property is in the best interests of the creditors to the bankruptcy estate; (ii) accurate and reasonable notice concerning the sale of the Property will be

provided to all applicable parties in interest; (iii) the purchase price of the Property is at full value based upon the appraisals of the Property; and (iv) the sale of the Property with Purchaser was negotiated in good faith and fair dealings, as the sale is at the full appraised value and paid in cash.

This Motion is made pursuant to 11 U.S.C. § 363(b), Fed. R. Bankr. P. 2002(a), and Local Bankruptcy Rule 6004-1(c). It is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Sammy Ciling, and any and all other supporting evidence presented to the Court.

Pursuant to Local Bankruptcy Rule 9013-1(f), any interested party opposing, joining or responding to the Motion must file and served such documents on the United States Trustee, located at 3685 Main Street, Suite 300, Riverside, CA 92501, and on Snowtime's counsel, Rosenstein & Hitzeman, AAPLC, at 28600 Mercedes Street, Temecula, CA, 92590, no later than fourteen (14) days before the date designated for hearing on this Motion, July 1, 2010, unless otherwise ordered by the Court

WHEREFORE, Snowtime requests that this Motion be granted, and that it be authorized to enter into the Purchase Agreement and sell the Property pursuant to the terms therein.

Dated: June 16 , 2010

Respectfully Submitted,
SNOWTIME HOLDINGS, INC.
Debtor and Debtor-In-Possession

By
Robert B. Rosenstein, for
Rosenstein & Hitzeman, AAPLC,
Attorneys for Snowtime Holdings, Inc.,
Debtor and Debtor-In-Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Snowtime Holdings, Inc. ("Snowtime") commenced this bankruptcy case by filing a Voluntary Chapter 11 bankruptcy petition on November 9, 2009. Snowtime is a Delaware corporation, incorporated on December 10, 2003. Snowtime was formed for the purpose of purchasing and holding real property for development or generation of rental income. Snowtime presents the following Memorandum of Points and Authorities in support of its Motion for an Order authorizing the sale of a piece of the Bankruptcy Estate's real property free and clear of all liens, claims, and interests thereon, to an "insider," as that term is defined under 11 U.S.C. § 101(31), of Snowtime.

### A.    REAL PROPERTY

A primary asset of the bankruptcy estate is a piece of real property ("Property"), located at 23120 Carancho Road, Temecula, CA 92590, and bearing assessor's parcel number 936-120-006. The Property has been appraised on two (2) separate occasions, once for Eight Hundred Eighty Thousand Dollars ($880,000.00) and the second time for Nine Hundred Thousand Dollars ($900,000.00) (See Exhibit "1" to the Declaration of Sammy Ciling ("Ciling Declaration"). The proposed purchaser is willing to pay, in full, the higher appraised value of Nine Hundred Thousand Dollars ($900,000.00) ("Purchase Price") for the purchase of the Property.

### B.    THE PURCHASE OFFER

Anke Ciling ("Purchaser") has made an offer to purchase the Property for the Purchase Price. Purchaser is the wife of Snowtime's president, sole director, and sole shareholder, Sammy Ciling, and therefore, is considered an insider of Snowtime. The Purchase Price represents the highest offer received by Snowtime for the sale of the Property and is also 100% of the market value of the Property. No other bidders have bid on the Property since the Purchaser tendered her offer to purchase the Property.

In order to delineate the terms and conditions to the proposed sale of the Property, Purchaser and Snowtime have entered into a purchase agreement ("Purchase Agreement") for the sale of the Property. (See Exhibit "2" to the Ciling Declaration.) As set forth in Paragraph 5 of the Purchase

1    Agreement, the Agreement is contingent upon the Court's approval pursuant to the terms therein.  If

2    the Court approves of the instant sale of the Property, then the sale will occur promptly thereafter.

3    Purchaser has obtained financing for the sale of the Property as evidenced by the Loan Pre-Approval

4    Confirmation Letter, attached as Exhibit "3" to the Ciling Declaration.

5    **C.    THE BENEFIT TO THE BANKRUPTCY ESTATE**

6         The proposed sale of the Property to the Purchaser will provide substantial benefits for the

7    bankruptcy estate.  The funds from the Purchase Price will be initially applied to pay for normal and

8    customary closing costs and fees.  The remainder of the Purchase Price will be applied to pay Bank

9    of America N.A. ("Bank of America"), as the sole secured creditor to the Property.  As such, selling

10   the Property to Purchaser should produce the greatest return for Bank of America.[1]

11   **II.    LEGAL AUTHORITY**

12   **A.    THE COURT HAS AUTHORITY TO APPROVE OF THE SALE OF REAL**

13   **PROPERTY ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS**

14        The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, which

15   permits the Court to hear all "core proceedings" arising under Chapter 11 of the Bankruptcy Code.

16   This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

17        11 U.S.C. § 363(b), states, in part, that "[t]he trustee [or debtor-in-possession], after notice

18   and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

19   estate…" 11 U.S.C. § 1107(a) (a debtor-in-possession shall have the same rights and obligations of a

20   trustee); *see* In re 240 North Brand Partners, Ltd., 200 B.R. 653, 659 (9th Cir. BAP 1996).  Under 11

21   U.S.C. § 363(b), the debtor-in-possession may sell property of the bankruptcy estate outside the

22   ordinary course of business, if there is a valid business justification for the sale, adequate notice to all

23   creditors is provided regarding the sale of property, and a hearing is held regarding the matter.  Id.;

24   *see* In re Schipper 933 F.2d 513, 515 (7th Cir. 1991).

25        Here, there is a valid business justification for the sale of the Property, with the proceeds

26   from the sale being applied to the payment of the bankruptcy estate's secured creditor, Bank of

27   America.  The sale of the Property will provide the highest possible return for the bankruptcy estate,

28

---

[1] Further benefits to the bankruptcy estate and its creditors with respect to the sale of the Property are set forth in § II(C) hereof.

NOTICE OF MOTION AND MOTION FOR ORDER            5
TO APPROVE SALE OF ESTATE REAL PROPERTY

1  which will consequently provide more funds to distribute to Bank of America as the secured creditor

2  to the Property. In addition, the Purchase Price represents 100% of the higher appraised value of the

3  Property, as Purchaser is purchasing the Property at full market value pursuant to the appraisals

4  conducted on the Property.

5  **B.    THE PROPERTY SHOULD BE SOLD FREE AND CLEAR OF ALL LIENS,**

6  **CLAIMS, AND INTERESTS**

7  Snowtime requests that the Property be sold free and clear of all liens, claims, and interests of

8  Bank of America. Under 11 U.S.C. § 363(f)(5), a debtor-in-possession may sell property free and

9  clear of any interests in such property of an entity if "such entity could be compelled, in a legal or

10  equitable proceeding, to accept a money satisfaction of such interest."

11  In the instant bankruptcy case, Bank of America, as lienholders of the Property, could be

12  compelled to accept a money satisfaction for their liens on the Property through California's non-

13  judicial foreclosure proceedings, which proceedings were initiated on the Property prior to

14  Snowtime's bankruptcy filing. In re Jolan, Inc. 403 B.R. 866, 870 (Bankr. W.D. Wash., April 30,

15  2009) (non-judicial foreclosures may operate as a "proceeding" under 11 U.S.C. § 365(f)(5) for

16  purposes of compelling lienholders to accept a money satisfaction of their interest in the secured

17  property). Non-judicial foreclosures in California operate to clear a junior lienholder's interests on

18  foreclosed property, whereby the junior lienholder's remaining remedy is to sue the obligor directly

19  for money damages in lieu of forfeiting the security interest on the property. California Code of Civil

20  Procedure § 580(d); see Bank of America National Trust & Savings Association v. Graves, 51 CA4th

21  607, 611-613 (1996) (CCP §580(d) does not bar junior lienholders from suing the obligor directly

22  after security is extinguished by non-judicial foreclosure of the senior lien). Therefore, pursuant to

23  11 U.S.C. § 363(f)(5), and as provided above, this Court is authorized to approve the sale of the

24  Property free and clear of all liens, claims, and interests thereon due to the fact that the lienholder on

25  the Property could be compelled to accept a money satisfaction for its lien through non-judicial

26  foreclosure proceedings.

27  The Court pursuant to 11 U.S.C. §§ 506(a), and 1129(b) would have the ability to revalue the

28  Property to the appraised value and thus "strip" the remainder of the secured lien. Since the proposal

1   is to sell at its full appraised value, the secured creditor who would have the right to the proceeds is

2   receiving the highest value by avoiding seller costs.

3         As held in In re Jolan, the Bankruptcy Court accepted a federal tax lien sale and a state tax

4   sale on real property as possible legal proceedings whereby lienholders, such as Bank of America,

5   could be compelled to accept a money satisfaction for their liens on the property. 26 U.S.C. §§ 6335,

6   6339(c), and 6342(c); California Revenue and Tax Code §§ 2192.1, 3712; In re Jolan at 870; *accord*

7   Potter v. Los Angeles County 251 Cal App 2d 280, 286 (1967, 2nd Dist) (purchaser takes title free

8   and clear of all encumbrances during auction of tax-deeded property). Therefore, the Property may

9   be sold free and clear of all liens, claims, and interests thereon for the reasons set forth above.

10         A debtor-in-possession may also sell a property free and clear of any interests thereon if

11   applicable non-bankruptcy law permits the sale of such property free and clear of such interest. 11

12   U.S.C. 363(f)(1). While California real property law does not generally permit a sale of real property

13   free and clear of encumbrances, but as provided above, non-judicial foreclosure proceedings, federal

14   tax lien sales, and state tax sales on real property operate and have previously qualified with the

15   Court as non-bankruptcy proceedings whereby the lienholders on secured property may be compelled

16   to accept a money satisfaction for their liens and the property may be sold free and clear of

17   encumbrances. In re Jolan at 870. As such, applicable non-bankruptcy law exists to permit the sale

18   of the Property due to the fact that those legal and equitable proceedings that would compel Bank of

19   America to accept a money satisfaction for their liens on the Property would also serve to sell the

20   Property free and clear of all encumbrances. The Court is therefore authorized to approve of the sale

21   of the Property free and clear of all liens, claims, and interests thereon pursuant to 11 U.S.C. §§

22   363(f)(1), and 363(f)(5).

23   **C.    SALE OF A MAJOR ASSET OF THE BANKRUPTCY ESTATE IS**

24   **JUSTIFIED**

25         The Property is the major asset of the bankruptcy estate. Courts have held that a debtor-in-

26   possession may be authorized to sell substantially all the assets of the bankruptcy estate when the

27   following factors are present: "a business justification based on sound judgment, the nature of the

28   asset and whether it is increasing or decreasing, whether the sale furthers the interests of the debtor,

1    creditors and equity holders alike, and whether it renders creditors' rights under Chapter 11

2    meaningless." In re Humboldt Creamery, LLC, 2009 Bankr. LEXIS 2470, 2475 (Bankr. N.D. Cal.

3    Aug. 14, 2009); see Committee of Equity Security Holders v. Lionel Corporation (In re Lionel

4    Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983).

5        In the case of Snowtime, all of the foregoing factors have been met by Snowtime in order for

6    the Court to authorize the sale of substantially all the assets of the bankruptcy estate. As the sale

7    price is for its full market value, the sale of the Property is justified insofar as Snowtime's

8    reorganizational strategy is to repay its creditors to the greatest level possible. The proposed sale to

9    Purchaser represents a sale at 100% of its appraised value for the Property, which value was

10   determined through two (2) appraisals on the Property.

11       The sale of the Property as proposed would benefit the secured creditor by virtue of the fact

12   that the net proceeds from the sale will go directly towards the repayment of Bank of America's

13   secured loan on the Property. Because the Property is being sold at full market value, as determined

14   by appraisal of the Property, Bank of America, as the Property's sole secured creditor, would receive

15   more money of the proposed sale, as opposed to, halting the sale and foreclosing on the Property. If

16   Bank of America foreclosed on the Property, it would be responsible for marketing and selling costs

17   for the Property, which would include real estate commission fees generally at 6% and holding fees,

18   and other costs traditionally associated with the marketing and sale of property. Therefore, Bank of

19   America will benefit in this transaction. It is also uncertain as to whether Bank of America would be

20   able to secure a duly financed buyer at full market value for the Property because of the volatile real

21   estate market. As such, Bank of America could incur costs in holding of the Property.

22       The rights of the creditors of the bankruptcy estate will not be rendered meaningless should

23   the proposed sale be authorized by the Court. Snowtime's reorganizational strategy is based upon

24   the liquidation of the Property. Due to the fact that Bank of America is the sole secured creditor on

25   the Property, which gives Bank of America priority with respect to receiving the proceeds from the

26   sale of the Property, and because the value of Bank of America's lien is in excess of the equity in the

27   Property, there would be no remaining funds to disburse to the bankruptcy estate's creditors after

28   Bank of America was paid out from the sale of the Property. Therefore, none of the bankruptcy

estate's creditors, except for Bank of America, would be entitled to the proceeds of the sale of the Property, unless the proposed purchase price was in excess of Bank of America's lien on the Property, whereby the excess between the lien amount and the purchase price could be distributed to other creditors of the bankruptcy estate. Bank of America's claimed lien on the Property is in excess of Two Million Dollars ($2,000,000.00). The current market value for the Property is Nine Hundred Thousand Dollars ($900,000.00). Therefore, it is unlikely that a purchaser could be secured for an amount in excess of Bank of America's lien since the amount of the lien is more than twice the market value of the Property. For this reason, it is highly unlikely that the rights of creditors would be rendered meaningless from the sale of the Property, since those creditors would not have any rights to the proceeds of the sale, unless the Property was sold for an amount higher than the Bank of America lien.

WHEREFORE, Snowtime respectfully requests that the Court enter an Order authorizing Snowtime to enter into the Purchase Agreement and sell the Property pursuant to the terms therein; and grant any additional relief the Court deems appropriate.


Dated: June 1 , 2010                    Respectfully Submitted,
                                        SNOWTIME HOLDINGS, INC.
                                        Debtor and Debtor-in-Possession


                                        By
                                        Robert B. Rosenstein, for
                                        Rosenstein & Hitzeman, AAPLC,
                                        Attorneys for Snowtime Holdings, Inc.,
                                        Debtor and Debtor-In-Possession

## DECLARATION OF SAMMY CILING

## IN SUPPORT OF MOTION

I, Sammy Ciling, declare as follows:

1.    I make this Declaration based upon my personal knowledge and, if called upon to testify, I could and would competently testify truthfully thereto.

2.    I am the President and sole Director of the Chapter 11 Debtor and Debtor-In-Possession, Snowtime Holdings, Inc. ("Snowtime").

3.    Snowtime is a Delaware corporation, incorporated on December 10, 2003. Snowtime was formed for the purpose of purchasing and holding several pieces of real property to develop or generate rental income.

4.    The primary asset of the bankruptcy estate is a piece of real property ("Property"), located at 23120 Carancho Road, Temecula, CA 92590, and bearing assessor's parcel number 936-120-006. The Property is substantially all the assets of the bankruptcy estate.

5.    I caused the Property to be appraised on two (2) separate occasions. One appraisal resulted in a value of Eight Hundred Eighty Thousand Dollars ($880,000.00) and another appraisal resulted in a value of Nine Hundred Thousand Dollars ($900,000.00). Attached as Exhibit "1" hereto are true and correct copies of the appraisals conducted on the Property, incorporated herein by this reference and made a part hereof.

6.    The proposed purchaser is willing to pay, in full, the higher appraisal value of Nine Hundred Thousand Dollars ($900,000.00) ("Purchase Price") for the purchase of the Property, attached as Exhibit "2" hereto is a true and correct copy of the purchase agreement ("Purchase Agreement"), incorporated herein by this reference and made a part hereof.

7.    Anke Ciling ("Purchaser") has made an offer to purchase the Purchase Price.

8.    Purchaser is my wife.

9.    The Purchase Price represents the highest offer received by Snowtime for the sale of the Property.

10.    No other bidders have bid on the Property since the Purchaser tendered her offer to purchase the Property.

11.     Purchaser and Snowtime have entered into a Purchase Agreement for the sale of the Property.

12.     The Purchase Agreement is subject to and contingent upon this Court's approval pursuant to the terms therein. If the Court approves of the instant sale of the Property, then the sale will occur promptly thereafter.

13.     During the ordinary course of business, in order to receive confirmation regarding the financing of the Purchase Price, I received written proof regarding Purchaser's financing for the sale of the Property as evidenced by the Loan Pre-Approval Confirmation Letter, attached hereto as Exhibit "3," incorporated herein by this reference and made a part hereof.

14.     As the President and sole director of Snowtime, I believe that it is in the best interests of Snowtime to enter into the Purchase Agreement and sell the Property pursuant to the terms therein, as the contemplated sale will produce the greatest monetary return for the secured creditor on the Property.

I declare under the penalty of perjury under the laws of the State of California, and the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 16th day of June, 2010, at _Temecula_, California.

_____
Sammy Ciling

NOTICE OF MOTION AND MOTION FOR ORDER          11
TO APPROVE SALE OF ESTATE REAL PROPERTY

# EXHIBIT "1"

# APPRAISAL REPORT

## OF



23120 Carancho Road
Temecula, CA 92590

## PREPARED FOR

Robert B. Rosenstein
Rosenstein & Hitzeman
28600 Mercedes St.
Temecula, CA 92590

## AS OF

11-25-2009

## PREPARED BY

TUCKER APPRAISAL SERVICE CORP
P.O. Box 673
Murrieta CA, 92564-0673

Murrieta CA, 92564-0673

12-04-2009

Rosenstein & Hitzeman
28600 Mercedes St.
Temecula, CA 92590


RE:    Snowtime Holdings Inc.
       23120 Carancho Road
       Temecula, CA 92590
File No.    2009-372
Case No.

Dear

In accordance with your request, I have personally inspected and prepared an appraisal report of the real
property located at:

                    23120 Carancho Road, Temecula, CA 92590


The purpose of this appraisal is to estimate the market value of the property described in the body of this
appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation
of the property. The methods of approach and reasoning in the valuation of the various physical and
economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of
neighborhood data, led the appraiser to the conclusion that the market value, as of  11-25-2009
is:

                    $        900,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this
report.

It has been a pleasure to assist you. If I may be of further service to you in the future, please let me know.


Respectfully submitted,


Signature:  _____


JASON ARNOLD
TUCKER APPRAISAL SERVICE CORPORATION

APPRAISER APPRAISAL CORP

APPRAISAL AND REPORT IDENTIFICATION

File No.    2009-372
Case No.

| Borrower | Snowtime Holdings Inc. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address 23120 Carancho Road | | | | | | | |
| City | Temecula | County | Riverside | State | CA | Zip Code | 92590 |
| Lender/Client | Rosenstein & Hitzeman | | Address 28600 Mercedes St., Temecula, CA 92590 | | | | |

This Appraisal Report is one of the following types:

☐ **Self Contained**
A written report prepared under Standards Rule 2-2(A), pursuant to the Scope of Work, as disclosed elsewhere in this report.

☒ **Summary**
A written report prepared under Standards Rule 2-2(B), pursuant to the Scope of Work, as disclosed elsewhere in this report.

☐ **Restricted Use**
A written report prepared under Standards Rule 2-2(C), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.

## Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

· The statements of fact contained in this report are true and correct.
· The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
· I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.
· I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
· My engagement in this assignment was not contingent upon developing or reporting predetermined results.
· My compensation for completing this assignments is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
· My analyses, opinion and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
· I have (or have not) made a personal inspection of the property that is the subject of this report.
· No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

## Comments on Appraisal and Report Identification

**Note any USPAP related issues requiring disclosure and any State mandated requirements:**

Scope of Appraisal and Reporting Process

The 2006 Uniform Standards of Professional Appraisal Practice (effective 7/1/06) establish the "Scope of Work Rule" to guide the process of developing assignment results. Scope of work is simply the work undertaken in developing the assignment and defined as "the type and extent of research and analyses in an assignment". The focus of the scope of work rule is on ensuring that work undertaken is sufficient to develop credible assignment results. The appraisal process is a systematic procedure employed to provide the answer to a client's question about real property value. The professional typically employs one or more of three generally accepted appraisal techniques. These approaches to value are commonly known as the Cost Approach, the Income Approach, and the Direct Sales Comparison Approach. In undertaking the three approaches to value, the appraiser collects and carefully verifies details of comparable market data, which include land sales, building costs, rental rates, operating expenses, comparable improved sales, and supply and demand factors. Conclusions derived from the analysis are intended to reflect the perspective of a disinterested third party. If the appraiser did not utilize an approach, we discussed why. The client and the appraiser have agreed upon the Scope of Work in this report. The intended user is Sterling Savings Bank. No Third Parties are authorized to rely upon this report without the express written consent of the appraiser. The intended purpose of this report is for to estimate market value. It is important to understand that those who receive, or who might receive the report are not automatically intended users of the report. A party becomes an intended user only because the appraiser intends that party to use the report. The property date of value is as of 11-25-2009 . The date of inspection was 11-25-2009, and the date of signature was 11-30-2009. The client and intended user is Rosenstein & Hitzeman Attorneys at Law for Bankruptcy purposes .REPORT CLASSIFICATIONThe following Summary Appraisal Report is intended to comply with the reporting requirements as set forth under standards rule 2-2 (b) of The Uniform Standards of Professional Appraisal Practice (USPAP). It contains a summary discussion of the data, reasoning, and analyses that were used to develop the opinions of value. We have completed two of the three classical approaches to value which are the Sales Comparison and the Cost Approaches. The Income Approach was not employed as typical market participants would not utilize it. COMPETENCY AND COMPLIANCE PROVISION We are aware of the compliance and competency provisions of USPAP, and within our understanding of those provisions, the author of this report complies with all mandatory requirements. Noble R. Tucker Jr., MAI, SRA, Certified General Appraiser supervised the appraisal .and Jason T. Arnold a Licensed Appraiser conducted primary research on this appraisal. Jason T. Arnold inspected the property and researched the comparable's .Jason T. Arnold, is a Licensed Appraiser with the State of California (No. AL036108).Tucker Jr., MAI, SRA, is a Certified General Appraiser (No. AG001532). This report was prepared in draft form on 11-30-2009 and finalized on 12-04-2009.

| **APPRAISER:** | **SUPERVISORY APPRAISER** (only if required): |
|---|---|
| Signature: | Signature: |
| Name: JASON ARNOLD | Name: NOBLE R. TUCKER JR. MAI, SRA |
| Date Signed: 12-04-2009 | Date Signed: 12-04-2009 |
| State Certification #: AL036108 | State Certification #: AG001532 |
| or State License #: | or State License #: |
| State: CA | State: CA |
| Expiration Date of Certification or License:    1-6-2011 | Expiration Date of Certification or License:    1-31-2011 |
| | ☒ Did Not ☐ Exterior Only From Street ☐ Interior and Exterior |
| Effective Date of Appraisal:    11-25-2009 | |

| Client: | Rosenstein & Hitzeman | Client File #: | |
|---|---|---|---|
| Subject Property: | 23120 Carancho Road | Appraisal File #: | 2009-372 |

# Table of Contents

| Page Title | Page # |
|---|---|
| Appraisal Identification | 1 |
| Summary of Salient Features | 2 |
| URAR Page 1 | 3 |
| URAR Page 2 | 4 |
| URAR Page 3 | 5 |
| Extra Comps 4-5-6 | 6 |
| URAR Page 4 | 7 |
| URAR Page 5 | 8 |
| URAR Page 6 | 9 |
| Photo Subject | 10 |
| Photo Subject Extra | 11 |
| Photo Subject Extra | 12 |
| Photo Subject Extra | 13 |
| Photo Subject Extra | 14 |
| Photo Comparables 1-2-3 | 15 |
| Photo Comparables 4-5-6 | 16 |
| Location Map | 17 |
| Flood Map | 18 |
| AERIAL PHOTO | 19 |
| SKETCH | 20 |
| GARAGE SKECTH | 21 |
| PLAT MAP | 22 |
| LIQUEFACTION | 23 |
| SUBSIDENCE/NO SUBSIDENCE NOTED | 24 |
| PROPERTY PROFILE | 25 |
| LICENSE | 26 |
| LICENSE | 27 |
| Dig. Signature Authentication | 28 |

# SUMMARY OF SALIENT FEATURES

File No.    2009-372
Case No.

## SUBJECT INFORMATION

| | |
|---|---|
| Subject Address | 23120 Carancho Road |
| Legal Description | 6.22 ACRES NET IN PAR 1 PM 096/002 PM 15237 |
| City | Temecula |
| County | Riverside |
| State | CA |
| Zip Code | 92590 |
| Census Tract | 0432.15 |
| Map Reference | 957-E7 |

## SALES PRICE

| | |
|---|---|
| Sale Price | $ N/A |
| Date of Sale | Not applicable |

## CLIENT

| | |
|---|---|
| Borrower | Snowlime Holdings Inc. |
| Lender/Client | Rosenstein & Hitzeman |

## DESCRIPTION OF IMPROVEMENT

| | |
|---|---|
| Size (Square Feet) | 5,405 |
| Price per Square Foot | $ 0.00 |
| Location | Average |
| Age | 4 yrs |
| Condition | Average |
| Total Rooms | 12 |
| Bedrooms | 4 |
| Baths | 2.75 |

## APPRAISER

| | |
|---|---|
| Appraiser | JASON ARNOLD |
| Date of Appraised Value | 11-25-2009 |

## VALUE

| | |
|---|---|
| Final Opinion of Value $ | 900,000 |

## Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 23120 Carancho Road | City Temecula   State CA  Zip Code 92590 |
| Borrower Not Applicable   Owner of Public Record Snowtime Holdings Inc. | County Riverside |

Legal Description 6.22 ACRES NET IN PAR 1 PM 096/002 PM 15237
Assessor's Parcel # 936-120-006                Tax Year 2009          R.E. Taxes $ 10,211.22
Neighborhood Name De Luz                Map Reference 957-E7          Census Tract 0432.15
Occupant [ ] Owner [X] Tenant [ ] Vacant  Special Assessments $ N/A          [ ] PUD  HOA $ N/A          [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Bankruptcy purposes.
Lender/Client Rosenstein & Hitzeman          Address 28600 Mercedes St., Temecula, CA 92590
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offerings price(s), and date(s).  MLS, Dataquick, Assessor Records, County Records, Planning Department .

**CONTRACT**

I [X] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  See addenda

Contract Price $ N/A   Date of Contract n/a   Is the property seller the owner of public record? [X] Yes [ ] No  Data Source(s) Purchase Agreement
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [X] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.  The property is not currently listed.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 60 % |
| Built-Up [ ] Over 75% [X] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 600 Low | 0 | 2-4 Unit | 10 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6mths | | | High 40 | High 40 | Multi-Family | 15 % |
| | | | | | | 950 K Pred. | 5 | Commercial | 10 % |
| | | | | | | | | Other | 5 % |

Neighborhood Boundaries The subject is bounded by : De Luz Road to the north and west, Via Vaquero to the east, and Serrano Road to the south.

Neighborhood Description The subject is located in an unincorporated portion of Temecula in Riverside County known as De Luz. The subject neighborhood is comprised of single family homes on average sized lots. The subject is not located in any soil subsidence, liquefaction ,or earthquake zones according to the County of Riverside.

Market Conditions (including support for the above conclusions) The southern California market has decline significantly the last two years. Properties throughout Southern California have declined up to 30-60%. The subject area has had a decline in value but not as severe as some other areas.

**SITE**

Dimensions See Plat Map          Area 6.22 Acres          Shape Irregular          View Valley
Specific Zoning Classification R-A-5          Zoning Description Single Family Residential
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.  The highest and best use is the current use .

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements--Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [X] | | Sanitary Sewer | | Septic Tank | Alley | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X          FEMA Map # 06065C3280G          FEMA Map Date 8-28-2008
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.  The subject site is an irregular shaped lot located on level to gently sloping terrain. The septic sewer, Rancho water, gas and electricity, landscaping , perimeter fencing, and a vineyard for personal use only . On the site there is a unfinished sport court and pool. These two items are not completed or permitted by the county. Therefore they we did not include them in the value of the property.

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls Slab/Avg | | Floors Marble/Average | |
| # of Stories One | [ ] Full Basement [ ] Partial Basement | | Exterior Walls Travertine/Avg | | Walls Drywall/Avg | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area N/A sq. ft. | | Roof Surface Concrete Tile /Avg | | Trim/Finish Average | |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | | Gutters & Downspouts Average | | Bath Floor Tile/Average | |
| Design (Style) Conventional | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type Vinyl/Avg | | Bath Wainscot Tile/Average | |
| Year Built 2005 | Evidence of [ ] Infestation N/A | | Storm Sash/Insulated None | | Car Storage [ ] None | |
| Effective Age (Yrs) 4 | [ ] Dampness [ ] Settlement | | Screens None | | [X] Driveway  # of Cars 5 | |
| Attic [ ] None | Heating [ ] FWA [X] HWBB [ ] Radiant | | Amenities [ ] Woodstove(s) # | | Driveway Surface Concrete | |
| [ ] Drop Stair [ ] Stairs | [ ] Other  Fuel Gas | | [ ] Fireplace(s) # [X] Fence Perimeter | | [X] Garage  # of Cars 12 | |
| [X] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | | [ ] Patio/Deck [ ] Porch | | [ ] Carport  # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other N/A | | [ ] Pool [ ] Other | | [ ] Att. [X] Det. [ ] Built-in | |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe)
Finished area above grade contains:  12 Rooms  4 Bedrooms  2.75 Bath(s)  5,405 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.)  See comments in addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The home is in average condition .

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe
None noted upon the inspection of the property.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe  The subject property conforms to the subject neighborhood. The style, material, functional utility, quality of construction, and condition is inferior to other homes in the neighborhood.

File No.    2009-372
Case No.

## Uniform Residential Appraisal Report

| There are | 15 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 600,000 | to $ | 2,000,000 | . |

| There are | 15 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 600,000 | to $ | 2,000,000 | . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 23120 Carancho Road Temecula, CA 92590 | 44930 Via Renaissance Temecula, CA 92590 | | 45202 Calle Elena Temecula, CA 92590 | | 28077 Sycamore Mesa Road Temecula, CA 92590 | |
| Proximity to Subject | | 3.08 miles SE | | 2.25 miles SE | | 3.09 miles E | |
| Sale Price | $ N/A | | $ 990,000 | | $ 1,050,000 | | $ 1,150,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 137.50 sq. ft. | | $ 223.40 sq. ft. | | $ 237.11 sq. ft. | |
| Data Source(s) | | MRMLS/Dataquick | | MRMLS/Dataquick | | MRMLS/Dataquick | |
| Verification Source(s) | | MRMLS/Agent | | MRMLS/Agent | | MRMLS/Agent | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Active | -49,500 | Doc#09-374319 | | Doc#09-374319 | |
| Concessions | | Listing | | Cash Equiv. | | Cash Equiv | |
| Date of Sale/Time | Not applicable | 9-23-2009 Lst Dt | | 7-20-2009 Closed | -42,000 | 7-20-2009 Closed | -46,000 |
| Location | Average | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Similar | | Similar | | Similar | |
| Site | 6.22 Acres | 5.00 Acres | +13,286 | 4.75 Acres | +16,008 | 5.00 Acres | +13,286 |
| View | Valley | Similar | | Superior | -25,000 | Superior | -25,000 |
| Design (Style) | Conventional | Similar | | Similar | | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Actual Age | 2005 - 4 yrs | 2001 - 8 Yrs | | 2006 - 3 Yrs | | 1995 - 14 Yrs | |
| Condition | Average | Similar | | Similar | | Similar | |
| Above Grade | Total 12 Bdrms 4 Baths 2.75 | Total 15 Bdrms 7 Baths 7.50 | -15,000 | Total 12 Bdrms 5 Baths 4.25 | -5,000 | Total 11 Bdrms 4 Baths 4.50 | |
| Room Count | | | -14,250 | | -4,500 | | -5,250 |
| Gross Living Area | 5,405 sq. ft. | 7,200 sq. ft. | -26,925 | 4,700 sq. ft. | +10,575 | 4,850 sq. ft. | +8,325 |
| Basement & Finished | APN# | APN# | | APN# | | APN# | |
| Rooms Below Grade | 936-120-006 | 939-170-007 | | 938-080-016 | | 939-040-008 | |
| Functional Utility | Average | Similar | | Similar | | Similar | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 12 Car Gar. Det. | 4 Car Garage | +24,000 | 4 Car Garage | +24,000 | 5 Car Garage | +21,000 |
| Porch/Patio/Deck | Patio/Covered | Patio Covered | | Patio/Covered | | Patio/Covered | |
| Fireplace | None | 3 Fireplaces | -9,000 | 3 Fireplaces | -9,000 | 3 Fireplaces | -9,000 |
| Landscaping | Average | Similar | | Similar | | Similar | |
| Pool/Spa | None | Pool/Spa Superior | -40,000 | Pool/Spa Superior | -40,000 | Pool/Spa Superior | -40,000 |
| Net Adjustment (Total) | | [ ] + [X] - | $ -117,389 | [ ] + [X] - | $ -74,917 | [ ] + [X] - | $ -82,639 |
| Adjusted Sale Price | | Net Adj: -12% | | Net Adj: -7% | | Net Adj: -7% | |
| of Comparables | | Gross Adj: 19% | $ 872,611 | Gross Adj: 17% | $ 975,083 | Gross Adj: 15% | $ 1,067,361 |

[ ] [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain  The subject has not transferred in the last 3 years.

My research [X] did [ ] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  Dataquick

My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  Dataquick, MRMLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3-10-2005 | 8-8-2003 | 1-16-2004 | 1-16-2004 |
| Price of Prior Sale/Transfer | $483,500(LAND) | No Price | $775,000 | $775,000 |
| Data Source(s) | Dataquick/MRMLS | Dataquick/MRMLS | Dataquick/MRMLS | Dataquick/MRMLS |
| Effective Date of Data Source(s) | 11-30-2009 | 11-30-2009 | 11-30-2009 | 11-30-2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales  The subject property has not sold in the last three years.

Summary of Sales Comparison Approach    The Sales Comparison Approach is a method of valuation in which the subject property is compared directly to recent sales of similar competitive properties.  The indication of market value is the price at which an equally desirable property has recently sold or can be purchased in the open market and this approach is based on the Principle of Substitution.  The properties selected in the report were the best available at the time of the appraisal.  We selected comps from Temecula and Murrieta with 3 closed sales and 1 listing.  We feel that comps are a good indicator of value in comparison to the subject property.
WE HAVE MADE A SPECIAL ASSUMPTION THAT THE SUBJECT SKETCH IS ACCURATE AND CORRECT. THE SKETCH WAS SUBMITTED BY THE HOMEOWNER.THE SKETCH ALSO SHOWS THE HOME BEING 3 FULL BATHS. UPON OUR INSPECTION THE HOME IS 2.75 BATHES.

Indicated Value by Sales Comparison Approach $    900,000

Indicated Value by: Sales Comparison Approach $  900,000    Cost Approach (if developed) $  975,257    Income Approach (if developed) $    N/A
The Sales Comparison Approach was given primary weight. The Cost Approach supported the value conclusion. The Income Approach was not applied as there was limited data for rents and GIMs and typical market participants do not utilize this approach.

This appraisal is made [ ] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [X] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  Subject to review of a current title report and permits on the sport court and pool.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$    900,000  , as of    11-25-2009  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70  March 2005 | | Fannie Mae Form 1004  March 2005

Case 6:09-bk-36997-TD    DOUGLAS R. FISHER APPRAISAL CORP
File No.    2009-372
Case No.

## Uniform Residential Appraisal Report

**ADDITIONAL COMMENTS**

The subject property interior features are as follows: 1' thick exterior wall construction, crown moulding, gourmet kitchen with built in appliances, granite , tile, marble throughout , custom faux painting, large courtyard with koi pond and custom concrete, built in media niche in living room, custom closet organizers, custom tile in bathrooms , and his and her master shower with sky light. Exterior features : Travertine tile exterior and patio, 12 car garage , custom landscaping, un-permitted sport court and unfinished pool, fireplace, and vineyard. Overall the property is considered to be in average condition.

We gave all comps that were older a 1.0 % per month market deduction.

The properties selected in the report were the best available at the time of the appraisal. We selected comps from Temecula and Murrieta with 3 closed sales and 1 listing. We feel that comps are a good indicator of value in comparison to the subject property.

1.     Obtain recent sales; inspect the properties; verify the factual data and qualify the sale as an open market or "arm's length" transaction.
2.     Determine the units of comparison.  In the valuation of these properties, the most common unit of comparison in this particular market price per unit indicator.  Consequently, we have not performed a G.I.M. or E.G.I.M. analysis in this report.
3.     Analyze the comparables in relation to the subject and adjust the comparable sale prices for any physical, functional or locational differences.
The effects of financing must also be considered.
4.     Reconcile the value indications for the subject property developed from the sales and estimate a value for the subject property.
A search was conducted to uncover the most recent sales of comparable single-family sales available in the subject's competitive area.  The sales considered most pertinent are summarized on the preceding summary table/adjustment grid

### COST APPROACH TO VALUE (not required by Fannie Mae.)

Provide adequate information for the lender/client to replicate your cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)
See Comments

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 150,000 |
| Source of cost data | Dwelling     5,405    Sq. Ft. @ $    110.00 | =$ | | 594,550 |
| Quality rating from cost service         Effective date of cost data | Sq. Ft. @ $ | =$ | | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Landscape/Hardscape | | =$ | 75,000 |
| The cost figures were obtained from the Marshall & Swift Residential | Garage/Carport    4,000    Sq. Ft. @ $    25.50 | =$ | | 102,000 |
| Xpress software. The economic age life method was used to calculate | Total Estimate of Cost-new | | =$ | 771,550 |
| accrued depreciation based on an effective age of 4 years and a | Less      Physical 6    Functional 0     External 0 | | | |
| remaining economic life of 61 years.Land to value ratio is typical for | Depreciation    46,293         0          0 | =$ ( | | 46,293 ) |
| subject's market area. | Depreciated Cost of Improvements | | =$ | 725,257 |
| | "As-is" Value of Site Improvements | | =$ | 100,000 |
| Estimated Remaining Economic Life (HUD and VA only)         61         Years | Indicated Value By Cost Approach | | =$ | 975,257 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae.)

| | | | | | |
|---|---|---|---|---|---|
| Estimated Monthly Market Rent $    N/A    X Gross Multiplier    N/A    =$    N/A    Indicated Value by Income Approach    N/A | | | | | |

Summary of Income Approach (including support for market rent and GRM)  N/A

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowner's Association (HOA)? ☐ Yes ☐ No  Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project  N/A
Total number of phases    N/A    Total number of units    N/A    Total number of units sold    N/A
Total number of units rented    N/A    Total number of units for sale    N/A    Data source(s)    N/A
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.  N/A
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data source.  N/A
Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.  None

Are the common elements leased to or by the Homeowner's Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.  N/A

Describe common elements and recreational facilities.  N/A

File No.    2009-372
Case No.

| | | | |
|---|---|---|---|
| Borrower | Snowtime Holdings Inc. | | |
| Property Address | 23120 Carancho Road | | |
| City Temecula | County Riverside | State CA | Zip Code 92590 |
| Lender/Client | Rosenstein & Hitzeman | Address 28600 Mercedes St., Temecula, CA 92590 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 23120 Carancho Road Temecula, CA 92590 | 20450 Vista Flora Murrieta, CA 92562 | | 44855 Via Renaissance Temecula, CA 92590 | | 20610 Calle Cabazon Temecula, CA 92590 | |
| Proximity to Subject | | 5.25 miles NW | | 3.08 miles SE | | 3.88 miles W | |
| Sale Price | $ N/A | $ 990,000 | | $ 1,000,000 | | $ 895,000 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 178.19 sq. ft. | | $ 181.98 sq. ft. | | $ 120.26 sq. ft. | |
| Data Source(s) | | MRMLS/Dataquick | | MRMLS/Dataquick | | MRMLS/Dataquick | |
| Verification Source(s) | | MRMLS/Agent | | MRMLS/Agent | | MRMLS/Agent | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | Active | -49,500 | Doc#09-594212 | | Active | -44,750 |
| Concessions | | Listing | | Cash Equiv | | Listing | |
| Date of Sale/Time | Not applicable | 9-1-2009 Lst Dt. | | 11-17-2009 Closed | | 11-17-2009 | |
| Location | Average | Similar | | Similar | | Similar | |
| Leasehold/Fee Simple | Fee Simple | Similar | | Similar | | Similar | |
| Site | 6.22 Acres | 10.75 Acres | -49,332 | 4.83 Acres | +15,137 | 9.4 Acres | -34,630 |
| View | Valley | Similar | | Superior | -25,000 | Similar | |
| Design (Style) | Conventional | Similar | | Similar | | Similar | |
| Quality of Construction | Average | Similar | | Similar | | Similar | |
| Actual Age | 2005 - 4 yrs | 2007 - 2 Yrs | | 1999 - 10 Yrs | | 2003 - 6 Yrs | |
| Condition | Average | Similar | | Similar | | Similar | |
| Above Grade | Total 12 Bdrms 4 Baths 2.75 | Total 12 Bdrms 5 Baths 5.00 | -5,000 -6,750 | Total 12 Bdrms 5 Baths 5.50 | -5,000 -8,250 | Total 12 Bdrms 5 Baths 5.50 | -5,000 -8,250 |
| Room Count | | | | | | | |
| Gross Living Area | 5,405 sq. ft. | 5,556 sq. ft. | -2,265 | 5,495 sq. ft. | -1,350 | 7,442 sq. ft. | -30,555 |
| Basement & Finished | APN# | APN # | | APN# | | APN# | |
| Rooms Below Grade | 936-120-006 | 932-310-015 | | 939-140-018 | | 933-130-025 | |
| Functional Utility | Average | Similar | | Similar | | Similar | |
| Heating/Cooling | FAU/Central | FAU/Central | | FAU/Central | | FAU/Central | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 12 Car Gar. Det. | None | +36,000 | 4 Car Garage | +24,000 | 3Car Garage | +27,000 |
| Porch/Patio/Deck | Patio Covered | Similar | | Patio Covered | | Patio Covered | |
| Fireplace | None | 2 Fireplace | -6,000 | 3 Fireplaces | -9,000 | 1 Fireplaces | -3,000 |
| Landscaping | Average | None | +35,000 | Similar | | Similar | |
| Pool/Spa | None | Similar | | Pool/Spa Superior | -40,000 | Similar | |
| Net Adjustment (Total) | | + X - | $ -47,847 | + X - | $ -49,463 | + X - | $ -99,185 |
| Adjusted Sale Price | | Net Adj. -5% | | Net Adj. -5% | | Net Adj. -11% | |
| of Comparables | | Gross Adj: 19% | $ 942,153 | Gross Adj: 13% | $ 950,537 | Gross Adj: 17% | $ 795,815 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 3-10-2005 | 7-15-2004 | 10-30-2009 | 12-1-1988 |
| Price of Prior Sale/Transfer | $483,500(LAND) | Not disclosed | $105,000 | $57,000 (Land) |
| Data Source(s) | Dataquick/MRMLS | Dataquick/MRLS | Dataquick/MRMLS | Dataquick/MRMLS |
| Effective Date of Data Source(s) | 11-30-2009 | 11-30-2009 | 11-30-2009 | 11-30-2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Summary of Sales Comparison Approach

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

## SCOPE OF WORK:
The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

## INTENDED USE:
The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

## INTENDED USER:
The intended user of this appraisal report is the lender/client.

## DEFINITION OF MARKET VALUE:
The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:
The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**Uniform Residential Appraisal Report** Case No.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name JASON ARNOLD | Name NOBLE R. TUCKER JR. MAI, SRA |
| Company Name TUCKER APPRAISAL SERVICE CORP | Company Name TUCKER APPRAISAL SERVICE CORP. |
| Company Address P.O. Box 673 | Company Address P.O. Box 673 |
| Murrieta CA, 92564-0673 | Murrieta CA, 92564-0673 |
| Telephone Number 951-677-48888 | Telephone Number 951-677-4888 |
| Email Address MMTUCKER@AOL.COM | Email Address MMTUCKER@AOL.COM |
| Date of Signature and Report 12-04-2009 | Date of Signature 12-04-2009 |
| Effective Date of Appraisal 11-25-2009 | State Certification # AG001532 |
| State Certification # AL036108 | or State License # |
| or State License # | State CA |
| or Other (describe) State # | Expiration Date of Certification or License 1-31-2011 |
| State CA | |
| Expiration Date of Certification or License 1-6-2011 | |

ADDRESS OF PROPERTY APPRAISED
23120 Carancho Road
Temecula, CA 92590

APPRAISED VALUE OF SUBJECT PROPERTY $ 900,000
LENDER/CLIENT
Name Robert B. Rosenstein
Company Name Rosenstein & Hitzeman
Company Address 28600 Mercedes St.
Temecula, CA 92590
Email Address

SUBJECT PROPERTY

[X] Did not inspect subject property
[ ] Did inspect exterior of subject property from street
Date of Inspection
[ ] Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES

[X] Did not inspect exterior of comparable sales from street
[ ] Did inspect exterior of comparable sales from street
Date of Inspection

DOUGLAS R. ANDREWS & ASSOC. CORP
SUBJECT PHOTO ADDENDUM
File No.    2009-372
Case No.

| Borrower | Snowtime Holdings Inc. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 23120 Carancho Road | | | | | | |
| City   Temecula | | County | Riverside | State | CA | Zip Code | 92590 |
| Lender/Client | Rosenstein & Hitzeman | | Address | 28600 Mercedes St., Temecula, CA 92590 | | | |



**FRONT OF
SUBJECT PROPERTY**
23120 Carancho Road
Temecula, CA 92590



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

SUBJECT PHOTO ADDENDUM

| Borrower | Snowtime Holdings Inc. | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 23120 Carancho Road | | | | | | |
| City  Temecula | | County | Riverside | State | CA | Zip Code | 92590 |
| Lender/Client | Rosenstein & Hitzeman | | Address | 28600 Mercedes St., Temecula, CA 92590 | | | |



.75 Bathroom



Family Room



Bedroom